Dear Ms. Lee:
I am in receipt of your request seeking an opinion from this office concerning questions pertaining to a computer program code developed by employees of the assessor's office.
Your request states that employees of the Bossier Parish Assessor's Office have developed a computer program to accomplish much of the day-to-day operation of such an office. Your correspondence further indicates that this program is highly desirable to other assessors' offices. You also advise that your computer program was developed on work time and raise a number of questions concerning various aspects of Louisiana law. Some of your questions have already been addressed in a separate opinion from the State Ethics Commission, so this office will address only those left unanswered.
First, you raise the question, "Who owns the code for the computer program?" According to Op. Atty. Gen. No. 88-575, this computer program code could be considered a "work made for hire". The opinion cites the holding Easter Seal Society v. Playboy Enterprises, 815 F.2d 323 (U.S. App. 5th Cir. 1987), and reads in pertinent part:
 17 U.S.C.A. section 201(b) explains the "work made for hire" doctrine: "in the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights comprised in the copyright."
 If the [School] Board had specially commissioned or ordered that program from the employee, the Board is considered to be the author of that work
 Otherwise, the Board must prove that the employee was acting in the scope of his or her employment in order to gain authorship under the Copyright Act of 1976.
In Easter Seal Society v. Playboy Enterprises, 815 F.2d at 337, the court reached the following conclusions:
 Today we adopt a bright-line rule for determining whether a work was made as "for hire" under the 1976 Act. Only works by actual employees and independent contractors who fulfill the requirements of § 101(2) can be "for hire" under the new statute. Copyright "employees" are those persons called "employees" or servants for purposes of agency law.
The Easter Seal court turned to Restatement Second of Agency Law § 220 for factors to use in determining whether a person is an employee for purposes of the Copyright Act. Under the Restatement, factors to be considered are:
 (a) the extent of control, by the agreement, the master may exercise over the details of the work;
 (b) whether or not the one employed is engaged in a distinct occupation or business;
 (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
 (d) the skill required in the particular occupation;
 (e) whether the employer or workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
 (f) the length of time for which the person is employed;
 (g) the method of payment, whether by the time or by the job;
 (h) whether or not the work is part of the regular business of the employer;
 (i) whether or not the parties believe they are creating the relation of master and servant; and
 (j) whether the principal is or is not in business.
Your first question requires a factual determination, which would include the factors mentioned above. The question of ownership should therefore be made by the courts, if necessary, rather than this office.
From the limited information supplied in your opinion request, it appears that employees of the Bossier Parish Assessor's Office acting within the course and scope of their employment, are "employees" under the Copyright Act of 1976, 17 U.S.C. § 201. Employees of the assessor's office are under the control and supervision of that office; they were generally working on equipment supplied by the office; they do not appear to be temporary employees; and by accepting direction from the assessor's office, accepted the relationship of master and servant. As such, and in absence of a contractual agreement to the contrary, employees, who developed the computer program, would ordinarily have no ownership rights in it.
If the assessor's office is successful in securing an ownership interest in this computer program code, the question becomes whether the state, parish or assessor's office, itself, is the "author" of the computer program under the Copyright Act. Legal authority is scant when it comes to determining whether an assessor is employed by the state or parish or stands alone as a separate political subdivision. However, the United States Fifth Circuit Court of Appeals recently held that assessors are not parish officers for purposes of 18 U.S.C. § 666, a federal statute pertaining to misappropriation of federal funds. The Court's opinion in United States of America v. Phillips, 219 F.3d 404 at 412, (U.S. 5th Cir. 2000), reads in pertinent part:
 [T]he question of whether Phillips was an agent of St. Helena Parish within the meaning of § 666, turns on whether Phillips, as tax assessor, was authorized to act on behalf of the parish with respect to its funds.
 The answer to this question first requires an understanding of the relationship between an assessor and a parish under Louisiana law. The Louisiana Constitution, as well as statute, establishes assessment districts as independent of parish government and, therefore, although Phillips was the tax assessor for property in the parish, the parish has no power, authority, or control over the assessor's duties or job. See La. Const. art. VI
§§ 5(G) and 7(B), and art VII § 24 ("Tax Assessors"). An assessor's duties are set forth by state, not parish, law. See, e.g., La.R.S. §§ 47:1324, 1903, 1956-57, 1993. [Assessor] Phillips was not an officer of the parish as a matter of law.
 Moreover, the activities of the assessor are supervised by the Louisiana Tax Commission, a state board controlled by state officials. See La.R.S. 47:1831-37. The prosecution never challenged that the assessor's duties are driven by state law and the state tax commission, and that the parish has no control over the assessor.[FN12]
 FN12. We note that under standard agency principles, the ability to control an individual is a necessary element in any agency relationship. See Restatement of Agency (2d), § 1. The dissent regards agency principles as "irrelevant" because it is possible to construe Phillips as an individual "authorized [by the state] to act on behalf of the parish." We do not disagree, given the unlimited breadth of the statute, that this reading is possible. Such a reading, however, is contrary to the legislative history, our precedent, and the case law from the Supreme Court and our sister circuits. A reasonable application of the statute precludes the senseless conclusion that an individual can be an agent of one who exercises no control, direct or indirect, over that individual.
 We further note that the assessor's salary is not set by the parish, the salary is not paid for by the parish, and the assessor receives no employee benefits from the parish. The assessor's office has a separate retirement system and health and life insurance benefits. See La.R.S. 11:401-83. The tax assessor's office receives no federal funds, and, in fact, is almost wholly self-funded by a tax millage.[FN13]
 FN13. It is true that tax assessor geographical districts, with one exception, are coterminous with the territory of each parish and that the assessor is voted into office by the electors of the parish. It is also true that the taxes raised from the assessment district go to the parish. These connections, however, do not make [the assessor] an agent of the parish when he has no connection with any funds of the parish and when the parish has no control over him, either directly or indirectly. Moreover, state law requiring the parish to provide office space, furniture, and utilities illustrates the independence of the assessor as this provision would be unnecessary if the assessor's officer (sic) were a part of the parish government. See
La.R.S. 33:4713
 [T]he assessor's office is statutorily and practically removed from the parish government
(Emphasis added, footnotes 9, 10, and 11 omitted).
An assessor's duties are set forth by the Louisiana Constitution and state statute. La. Const. Art. VI, § 5(G) and 7(B), and Art. VII, § 24; La.R.S. 47:1324, 1903, 1956-57, 1993. In addition, an assessor's activities are supervised by the Louisiana Tax Commission, a state board controlled by state officials. La.R.S. 47:1831-37. Assessors are specifically designated as "political subdivisions" of the state under the Dual Office-holding Act. La.R.S. 42:62(9). As such, assessors' authority is granted to them by the legislature through the constitution and statute.
Applying the same standards used to determine whether employees of an assessors are "employees" under the Copyright Act, it might appear that assessors, though elected officials, are also employees of the state for purposes of the Copyright Act. Assessors' authority is granted by the state, their salaries are set by statute La.R.S. 47:1907) and they are supervised by the state through the Tax Commission. However, under La.R.S. 42:1441, assessors are not state employees.
La.R.S. 42:1441.3(E) reads, in pertinent part, as follows:
 [T]he term "political subdivision" means a parish, municipality, and any other unit of local government authorized by law to perform governmental functions; in addition, for the purposes of this Part tax assessors and all other elected parochial officials shall be separate political subdivisions.
Therefore, the Bossier Parish Assessor's Office is a separate political subdivision and, as such, would ordinarily be the "author" and owner of the computer program code under 17 U.S.C. § 201(b). Because the assessor is a separate political subdivision, neither the state nor parish can claim ownership of intellectual property developed in assessors' offices.
The second question you raise is, "[C]an the office sell the code to an outside marketing choice?" La.C.C. art. 477 of the Louisiana Civil Code defines ownership to include the right to "use, enjoy, and dispose of (a thing) within the limits and under the conditions established by law."
This office has previously opined that an assessor can sell obsolete tax rolls under R.S. 49:125. Op. Atty. Gen. No. 98-352. But a newly developed, specially-designed computer program code, which is unavailable elsewhere, hardly seems to be "obsolete." In fact, it is our understanding that there is a considerable amount of outside interest in obtaining this computer program code from your office. Because it does not appear to be "obsolete" and an exhaustive search of Louisiana jurisprudence and statutes has uncovered no other provision of law to the contrary, it would appear that La.C.C. art. 477 allows an assessor's office to use, enjoy, and dispose of the computer program code it develops "within the limits and conditions established by law," including but not limited to sale to private individuals or entities.
Article VII, § 14(C) of the Louisiana Constitution of 1974 allows the state and its political subdivisions to enter into cooperative endeavors with each other or with "any public or private association, corporation, or individual," for "a public purpose." Op. Atty. Gen. No. 97-460. Therefore, it is our opinion that if the assessor's office is determined to be the "author" of this computer program, the Bossier Parish Assessor's Office could enter into cooperative agreements with other agencies, public or private, under existing state law. However, such cooperative endeavor(s) cannot be entered into for a purely private purpose or one which predominantly benefits a private group, as distinguished from the public at large.
The third question raised in your request is, "Could the assessor's office install this program in other assessors' offices?" R.S. 33:1324.1
reads in pertinent part:
 In order to effect economy of operation, any two or more political corporations or subdivisions may contract with each other to combine the use of administrative and operative personnel and equipment upon such basis of compensation therefore as may be mutually agreed to by all such political corporations and subdivisions.
Therefore, assuming the assessor's office is the "author" of this computer program, it appears that the Bossier Parish Assessor's Office could install this program in other assessors' offices, with one caveat. Any such agreement between two or more assessors' offices must be reduced to written form under R.S. 33:1325. That statute goes on to say that the agreement must be published in the official journal of the parish or municipality, in the same manner as are other proceedings of the governing body.
Fourth, you ask, "Could this office then support other offices and be called upon for consulting and as a result be compensated for either?" Under R.S. 33:1324.1, it would appear that employees of the Bossier Parish Assessor's office who developed the computer program could provide consulting services to other assessors' offices, subject to the criminal provisions of the public contract fraud statute, again assuming the assessor's office is the "author".
This office has previously concluded that where an individual enters into a service contract, the employment is not considered to be compensated on a salary or per diem basis and does not constitute employment under Louisiana's Dual Office-holding Law, R.S. 42:61 et seq. Op. Atty. Gen. Nos. 00-464, 97-528, and 96-9. However, Op. Atty. Gen. No. 00-464 tells us that entering into such a contract for installation or consulting services must not violate R.S. 14:140, public contract fraud. That statute reads in pertinent part:
 A. Public contract fraud is committed:
 (1) When any public officer or employee shall use his power or position as such officer or employee to secure any expenditure of public funds to himself, or to any partnership of which he is a member, or to any corporation of which he is an officer, stockholder or director
 The fact that an expenditure has been made to any of the parties named in Paragraph (1) of this Section shall be presumptive evidence that such person has used his power, position, or influence to secure such expenditure.
 B. Whoever commits the crime of public contract fraud shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both.
But for their position with the assessor's office, in which they developed the computer program at issue, these employees might lack the requisite knowledge, experience, and expertise necessary to perform professional and/or consulting services. If any employee of the Bossier Parish Assessor's Office were to enter into a professional and/or consulting service agreement with another public office, it would appear that they could be benefiting from knowledge, experience, and expertise gained by virtue of their work as an employee of that office. Generally, any payment of public funds to such an employee would be criminal. Therefore, under the public contract fraud statute employees of the assessor's office could be criminally charged if they are compensated for installation or consulting services concerning the computer program code they have developed.
A thorough review of Louisiana jurisprudence related to public contract fraud indicates that the presumption created by La.R.S. 14:140(B) is rebuttable and calls for a factual determination by a trier of fact and not this office. La. Atty. Gen. Op. No. 79-1043. The Louisiana Supreme Court has previously held that in order to be held chargeable for such an offense, the party had to commit "some other affirmative act in order to secure the awarding of a public contract to a firm in which he was interested." La. Atty. Gen. Op. No. 77-387; State v. Abernathy, 194 So. 19
(1940). The Court has also held the mere fact that a person's business concern profited by such a transaction was of no import in determining whether a defendant had directly or indirectly drawn any money from the parish treasury. La. Atty. Gen. Op. 77-387; State v. DeGeneres, 194 So. 24
(1940).
Our analysis of compensation does not stop there. Rather, we must also consider the state's public payroll fraud statute, La.R.S. 14:138. Under this statute, classified civil service employees are not entitled to a per diem as well as their salary, unless they take annual leave. Employees who are unclassified are entitled to receive both their salary and a per diem. La. Atty. Gen. Op. No. 97-523. Regardless, it appears the Bossier Parish Assessor's Office may contract with other offices in return for reimbursement of salaries and expenses for the employees involved. La. Atty. Gen. Op. No. 84-125.
Note that La.R.S. 14:138 and 14:140 only apply within this state. Any agreement with a foreign state entity would not fall under Louisiana's public contract fraud statute. Likewise, compensation from private entities will not constitute a crime under the public contract fraud provisions of state law, as they apply only to expenditure of Louisiana public funds.
Your fifth question is, "If this program were offered to other assessors' offices would it have to be offered to nongovernmental agencies?" It appears that there is no requirement to offer this computer program code to nongovernmental agencies under the provisions of La. Const. Art. VII, § 14(C), regardless of whether or not it is offered to other assessors' offices.
This office would be remiss in concluding discussion of this question without examination in regard to the case of Granger v. Litchfield,645 So.2d 1262 (La.App. 1 Cir. 1994). In Granger, an assessor sought to enjoin a sheriff from providing copies computerized parish tax rolls to any requestor. The trial court held that these rolls were public records, subject to access as such, and denied the assessor's request for injunctive relief and ordered that records be produced upon payment of reasonable copying fees.
Public records are governed by Title 44 of the Louisiana Revised Statutes. The term is defined in LSA-R.S. 44:1, which reads in pertinent part:
 All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in this Chapter or as otherwise specifically provided by law.
LSA-R.S. 44:1(A)(2) (Emphasis added)
An assessor's duties under state law are enumeration, listing, and assessing property as directed. LSA-R.S. 47:1901. Also, assessors are charged with enforcement of millage rollbacks (LSA-R.S. 47:1925.5); preparing, distributing, and returning blank tax forms for listing and assessment of property (LSA-R.S. 47:1956); canceling erroneous or double assessments (LSA-R.S. 47:1991); preparing and filing tax rolls (LSA-R.S.47:1993); and depositing funds received as reimbursement for preparation of listings and/or rolls into their salary and expense fund (LSA-R.S.47:1993.1).
Under the facts provided in your request, this computer program code is contained in office computers (electronic data processing equipment). It has been used and is being used; and was prepared, possessed and retained for use in the conduct, transaction and performance of business, transaction, work, duty, and function conducted, transacted and performed by or under the authority of the constitution or laws of this state. As such, this computer program code would ordinarily be considered a public record and, therefore, is subject to provisions of the Public Records Law.
R.S. 44:1(A)(2) concludes by stating that information described therein is public record, "except as otherwise provided in this Chapter or as otherwise specifically provided by law." Emphasis added. That statute has been reenacted under Act 707 of the 2001 Regular Legislative Session as R.S. 44:1(A)(2)(a) and is now followed by an exception to that general rule, which reads as follows:
 Notwithstanding Subparagraph (a), any documentary material of a security feature of a public body's electronic data processing system, information technology system, telecommunications network, or electronic security system, including hardware or software security, password, or security procedure, process, configuration, software, and code is not a "public record".
R.S. 44:1(A)(2)(b)
The exception is clearly limited to features. Unless this computer program code is a "security feature" of the Bossier Parish Assessor's Office's electronic data processing system, information technology system, telecommunications network, or electronic security system, it appears to be a public record.
Finally, you ask, "Would contracts between governmental agencies be needed to take care of liabilities, insurances, prices and lengths of duration?" The Software License Enforcement Act, R.S. 51:1963, indicates that a formal contract is generally unnecessary. The statute provides that notice of terms of purchase need only be clearly defined and conspicuously affixed to or packaged with software and visible upon cursory examination. Ordinarily, this would provide sufficient notice as to any terms, conditions, and/or limitations attached to such a transaction. Therefore, a formal contract does not appear to be required to limit liabilities, etc. on the part of the seller.
I hope this information is helpful in resolving the issues posed in your request. If this office can be of any further assistance in this matter, please feel free to contact us.
Very truly yours,
 Richard P. Ieyoub Attorney General
 By: CHARLES H. BRAUD, JR. Assistant Attorney General
RPI:CHB, Jr./mjb